SALMON TYLER AUSTIN, Plaintiff, *v.* NATIONAL EMPLOYMENT EXCHANGE, a Membership Corporation, Incorporated under the Laws of the State of New York, Defendant.

Municipal Court of the City of New York, Borough of Queens, Fourth District, August 2, 1933.

*Blank & Lesser* [*Sidney S. Lesser* of counsel], for the plaintiff.

*DeForest, Cullom & Elder* [*Henry W. Steingarten* of counsel], for the defendant.

PETTE, J.   Plaintiff sues to recover sixty dollars paid to defendant upon a contract, pursuant to which defendant was to secure an executive position for plaintiff.   The process was to send out a form letter addressed to prospective employers, stating plaintiff's qualifications and urging his employment.   The defendant is a large employment agency and maintains what it calls an " individual service division."   This branch of the defendant, by a mail campaign, thus undertook to bring plaintiff in contact with several organizations which might be interested in obtaining the services of a man possessing executive abilities.   There was nothing definite about whether a position would be secured, nor could it be known whether the plaintiff might be given an interview by any organization so canvassed.

The agreement in evidence, partly printed, partly written and partly blank, provides that plaintiff was to pay sixty dollars as a retainer for the services to be performed by defendant, and that in the event a position was secured for plaintiff within six months, an additional fee was to be paid according to a schedule which is printed on the face of the contract.   This schedule deals only with positions paying salaries ranging from $3,000 to $5,000 or more per year.   This fact is considered in connection with plaintiff's testimony that the position applied for was of an executive nature, and that defendant had agreed to secure such a placement for him.

Plaintiff and defendant knew each other for about twelve years. Plaintiff had filled several important positions — auditor and treasurer with the Loft Candy Company, assistant treasurer with the Schults United Company, assistant treasurer with the State Metalware Company, and a similar position with the Remington Arms Company. In his various capacities, plaintiff had many times applied for and secured hundreds of employees for his concern through the defendant. These facts are pointed out to show that the defendant had full knowledge of plaintiff's qualifications and of the type of positions which he had theretofore filled. There is no dispute that any executive position, such as plaintiff requested of defendant, was ever secured for him.

It appears, however, that after the six months provided for in the contract had elapsed, that is eight months from the execution thereof, defendant referred plaintiff to the Remington Cash Register Company for a salesman's job, which was not the kind of position which plaintiff had applied for. As a result, plaintiff accepted a salesman's position with Coey and Paley, the Brooklyn representatives of the above company. It was not a regular position, paid no salary, and plaintiff's duties were to endeavor to sell merchandise produced by the Remington Arms Company on a commission basis. But, plaintiff could and did sell any other article for other concerns. There is no evidence that plaintiff ever earned any money through his connection with the said Remington organization, and, in fact, the evidence is that he made no sales at all. It is also undisputed that plaintiff was never introduced by defendant to any employers offering an executive position.

The contract, after acknowledging receipt of the retainer of sixty dollars further provides: " It is understood that there will be no further charge to me unless I accept a position offered to me as a result of your efforts."

The implication is that the retainer so paid was not to be returned to plaintiff in any event, and was to be kept by defendant to cover its efforts on behalf of plaintiff. This is the defendant's claim, and in fact, the defendant shows that it has expended eighteen dollars and sixty-three cents for mailing matter, stamps, etc. Plaintiff, however, submits that he is entitled to a refund of the sixty dollars paid, upon the ground that he did not receive the position for which he applied. Demand for the money was made prior to the institution of this action. This requires an examination of the law.

Section 186 of the General Business Law, which is directly applicable, provides as follows: " In case a person applying for help or employment of a domestic or commercial employment agency shall not accept help or obtain employment through such

agency, then the licensed person conducting such agency shall on demand repay the full amount of the said fee, allowing three days' time to determine the fact of the applicant's failure to obtain help or employment."

It is settled that the business of an employment agency is subject to a reasonable regulation, so long as the regulation does not fix the price to be charged by the agency for securing employment. (*Brazee* v. *Michigan*, 241 U. S. 341; *Adams* v. *Tanner*, 244 id. 590; *Tyson* v. *Banton*, 273 id. 418; *Ribnik* v. *McBride*, 277 id. 350.)

The only question presented in the case at bar, therefore, is two-fold: (1) whether section 186 of the General Business Law, above quoted, applies to the facts at bar, and (2) whether it is constitutional in so far as it directs the return of fees by the employment agency.

There is no merit to defendant's contention that section 186 does not apply here. General Business Law, section 171, subdivision 2, defines the term " employment agency " so as to include the defendant and its " individual service division." The definition includes " any other agency or office for the purpose of procuring or attempting to procure help or employment or engagements for persons seeking employment or engagements, * * * or for giving information as to where and of whom such help, employment or engagement may be procured, where a fee or other valuable consideration is exacted * * *." Section 186 has been expressly held constitutional and a reasonable regulation applicable to " clerical and executive workers," by the Federal Court covering this State jurisdiction. (*National Employment Exchange* v. *Geraghty*, 60 F. [2d] 918.) The defendant, through its designated bureau, undertook to procure or attempt to procure employment for plaintiff, and to give information as to where and of whom the employment might be procured. The list received in evidence containing the names of the several firms to whom the circular letter was sent by defendant, was furnished by defendant, and it constituted, for the purpose of the issue under discussion, the giving of the information in question, and the list together with the correspondence constituted an attempt on the part of defendant, to secure employment for plaintiff. Also section 171, subdivision 7, defines the term " fee " to include any money paid for services to be rendered by an employment agency " of any kind." Plainly, the defendant's " individual service division " comes within the definition. It is immaterial whether the defendant subdivided its activities into particular branches. The contract is with the defendant, and whether the employment to be secured is for ordinary or skilled

labor, or of an executive character, cannot alter the legal position of the rights and duties of the parties under the contract and the provisions of law.

With respect to the second phase of the inquiry, the defendant urges that section 186, in so far as it directs the return of the fee exacted, if the position applied for is not secured, is unconstitutional, and in support of this contention, it refers to *Bradford* v. *Hargis* (45 F. [2d] 223), decided by the District Court of Missouri in 1930. That case held that a statute which prescribed that the maximum registration fee should be one dollar was unconstitutional, and also that the fee should be returned if no position is secured within one month after registration. Upon appeal to the United States Supreme Court, the decree issued in the *Bradford* case was ordered vacated, and the case dismissed as moot. (283 U. S. 781; 75 L. Ed. 1411.) It will readily appear that the statute involved in the *Bradford* case was radically different from the one under consideration at bar. Section 186 of the General Business Law does not fix a maximum or minimum fee, nor does it require that the fee collected be returned within any stated time. In the *Bradford* case it was said that the statute therein reviewed " offends still further against the due process clause by requiring an employment agency to return to applicants even such fees as the statute authorizes, if employment is not actually secured by applicants within one month after registration." There is a clear distinction between fixing the maximum fee to be charged for registration, and at the same time directing its return within one month, and the requirements of section 186 under discussion, which fixes no maximum fee and no time limit for its return. Furthermore, I cannot subscribe to the proposition that the requirements that the fee shall be returned constitutes a taking of property without due process of law. This view is fortified by the opinion rendered by the Circuit Court of Appeals, Second Circuit, covering this territory, in *National Employment Exchange* v. *Geraghty*, handed down July 29, 1932 (60 F. [2d] 918). It will be noticed that said decision is by a court of higher jurisdiction than the one which decided the *Bradford* case, and a reading of the opinion convinces me that it is based upon practical grounds and sound reasoning. In the *National Employment Exchange* v. *Geraghty case*, this very defendant sought to enjoin the Commission of Licenses from revoking its license, upon the ground that it was violating section 186 of the General Business Law, which is the same section now under consideration. It was contended by the agency that it had developed " an individual service division " which " prepares a letter to a valuable, selected list of employers

for a definite retainer fee," which fee was retained even though the efforts of the agency to secure a position were unsuccessful. The agency contended that section 186 was unconstitutional to the extent that it required the return of the retainer. Circuit Judge AUGUSTUS N. HAND, in writing for a unanimous court, said: " The question before us is whether a statute requiring that the charge be contingent upon success in procuring employment passes the bounds of reasonable regulation. The effect of such a statute is to make the cases where employment is secured bear the cost of unsuccessful effort * * *. The powerful dissents in *Adams* v. *Tanner*, *Tyson* v. *Banton*, and *Ribnik* v. *McBride*, and the narrow margin by which the views of the majority prevailed, warn us that the doctrines of these cases are not likely to extend beyond the precise facts presented. Moreover, it is obvious, as well as amply demonstrated, that employees (even of the ' white collar ' class of the present case) have a bargaining power in general far weaker than that of employers. They are often, as in these very times, in a desperately poor condition, ready to pay almost anything possible in the hope of securing employment. Under such circumstances, it is easy to delude them by false hopes and to get their money where there is little or no chance of doing them any service. To require success in securing employment for an applicant, not only prevents much fraud and oppression, but benefits a class both needy and very numerous. It also greatly stimulates activity and diligence on the part of an agency by substituting for a more general desire to promote the reputation of the agency for a successful effort, a direct interest in the retention of the employee's deposit and fear of losing it. * * * Undoubtedly under the New York Act and that of many other states the successful cases pay for the unsuccessful and the employment agency takes the risk of getting enough jobs for workers to enable it to carry its business. Continuance of the business, as in fire, life or accident insurance, must depend upon the capacity of those managing it to adjust their charges to the contingencies involved."

It seems to me that the foregoing remarks of Judge HAND fully cover the present case. The statute was enacted to prevent the perpetration of fraud, which could be easily accomplished in such cases and from which an applicant for employment would otherwise have no protection whatever. No case in point in this State has been called to my attention, nor has independent search revealed any adjudication by any court in this State construing the provisions of section 186 here interpreted. I hold to the view that the decision in *National Employment Exchange* v. *Geraghty* correctly

determines the issue of constitutionality, and upon the facts of this case, I find that the defendant did not procure the executive position which plaintiff requested, and that, therefore, defendant, by virtue of the provisions of section 186, General Business Law, may not retain the fee paid, and must return it.

Judgment is, therefore, accordingly rendered in favor of plaintiff for the amount demanded with costs.